IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CAMPBELL GLOBAL, LLC, a Delaware limited liability company; and BASCOM SOUTHERN, LLC, a Delaware limited liability company,** | No. 3:16-cv-02091-MO<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| **AMERICAN ECONOMY INSURANCE COMPANY, an Indiana corporation; GENERAL INSURANCE COMPANY OF AMERICA, a New Hampshire corporation; and FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire corporation,** | |
| Defendants. | |

**MOSMAN, J.**,

Plaintiffs-insureds bring this action against Defendants-insurers for breach of contract on the basis that Defendants allegedly breached their duty to indemnify Plaintiffs (Claim One), and for negligent claims handling on the basis that Defendants failed to timely indemnify Plaintiffs after an arbitration award was entered against them (Claim Two). By Order (#15) issued January 27, 2017, the Court granted the parties' joint request to proceed only as to Claim One in the first stage of this litigation, and, if necessary, to proceed to discovery and dispositive motions on Claim Two only after resolving dispositive motions on Claim One.

1 – OPINION AND ORDER

On May 19, 2017, Defendants filed a Motion (#22) for Partial Summary Judgment on Count One of Plaintiffs' Complaint. On May 23, 2017, Plaintiffs filed a Corrected Motion (#27) for Summary Judgment on Stage One Claims.[1]

For the reasons stated below, the Court GRANTS Defendants' Motion (#22) for Partial Summary Judgment and DENIES Plaintiffs' Corrected Motion (#27) for Summary Judgment on Stage One Claims.

## BACKGROUND

The following facts are undisputed and taken from the record on summary judgment.

In 1968 Plaintiffs' predecessor organization leased approximately 11,000 acres of forest land in Alabama from the Gray family and related organizations (referred to collectively as "the Grays") for a term of 45 years. Defendants provided liability insurance to Plaintiffs beginning in the early-2000s through the termination of the lease.

Among other provisions, the lease required Plaintiffs to return the land to the Grays in "good condition" upon the termination of the lease. The lease also contained an attorney fees provision that required the non-prevailing party to pay the attorney fees of the prevailing party in any action to enforce the lease. Declaration of Margaret M. Van Valkenburg (#23) Ex. 2, at 14.

An agent of the Grays surveyed the land in 2009 in anticipation of the lease's 2013 expiration, and identified for Plaintiffs several deficiencies in the condition of the land that, in the Grays' view, needed to be remedied. When the lease expired in 2013, however, the Grays still found the condition of the land to be inadequate. Accordingly, the Grays filed an arbitration

---

[1] Plaintiffs filed their initial Motion (#25) for Summary Judgment on Stage One Claims on May 19, 2017. Because that Motion was superseded by Plaintiffs' subsequent Corrected Motion (#27), the Court DENIES Plaintiffs' Motion (#25) as moot.

2 – OPINION AND ORDER

action against Plaintiffs for, *inter alia*, breach of contract and negligence. Defendants provided a defense to Plaintiffs in the arbitration action under a reservation of rights.

On August 17, 2016, after a six-day arbitration in July 2016, the arbitrators found Plaintiffs (Respondents in the arbitration) to be jointly and severally liable for $3,506,214.00 in damages, which included $907,714.00 in attorney fees and costs incurred by the Grays (Claimants in the arbitration). The arbitrators concluded the claims that were not based on negligence or breach of contract were unfounded. Van Valkenburg Decl. (#23) Ex. 7, at 2. With respect to negligence and breach of contract, however, the arbitrators found:

> As to the Claimants' remaining claims for negligence and breach of contract, the Respondents' Motion for Judgment as a Matter of Law is DENIED, and the Arbitrators hereby find as follows:
>
> a. The Respondents were required to surrender the "Lands" to the Claimants in "good condition" as of March 31, 2013.
>
> b. The "Lands" were not in "good condition" as of March 31, 2013.
>
> c. The Claimants have suffered damages due to the "Lands" not being in "good condition" as of March 31, 2013.
>
> d. The "Lands" include the following specific items for which Claimants are awarded damages:
>
> i. Stocking – Damages for overstocked stands and understocked stands are reasonably assessed in the amount of $400,000.
>
> ii. Release – No damages for release of hardwood competition are assessed.
>
> iii. Roads – The roads need repair (including culverts to address creek sediment), and the reasonable damage to the roads (including culverts) is $590,000.
>
> iv. Skid Trails – The skid trails need repair, and the reasonable damages for the skid trails is $565,000.
>
> v. Creek sediment damage is $6500.

3 – OPINION AND ORDER

vi. Nuisance Control – The invasive species need treatment, and the damages for the treatment of the invasive species is $25,000.

vii. Boundary Lines – The damages for the boundary lines is $12,000.

viii. 1st and 2nd Generation Seedlings – Planting 1st generation seedlings on the Lands has damaged the Claimants and these damages are assessed in the amount of $1,000,000.

ix. Attorney's Fees and Costs – After considering the Claimants' request for attorney's fees and costs as follows: McCorquodale Law Firm, 1500 hours, $450,000; Wilson and Drinkard, 200 hours, $60,000; McCorquodale Law Firm expenses as of August 8, 2016, $120,823.05; and Gray Family expenses of $276,890.72; totaling $907,714, the Arbitrators hereby find that the attorney's fees and costs are reasonable and necessary and due to be awarded to the Claimants.

*Id.* Ex. 7, at 2-4. In addition, the arbitrators made the following "findings of fact and observations":

a. Although the damages awarded herein are actual damages, and not punitive or exemplary damages, the Arbitrators find that the Respondents did not act in good faith. The Respondents, Campbell and Bascom, were intent on getting by as cheaply as they could, without regard to the lease and good management practices. A good example of this is that they planted 1st generation trees (not used much since the mid 1980"s [*sic*]) on this leased land and 2nd generation on their own fee lands, which constituted a violation of the spirit and intent of the lease and resulted in long-term damage to the landowners;

b. Also, the Respondents permitted serious BMP (Best Management Practices) violations by loggers damaging roads and skid trails. Contract logging operation management and oversight was non-existent by the Respondents on ground management. In their efforts to maximize timber harvesting near the end of the lease, damage was done to the lands when operations should have been shut down because of weather conditions. The landowners were not free from fault, as they could have contacted the Alabama Forestry Commission and reported the BMP violations. The Arbitrators question whether the Respondents even required performance deposits and, if so, what became of them. When it was evident that there were problems with BMP violations the Respondents did not go back and fix them.

c. The Arbitrators considered the invasive species issues and concluded that although hunters are expected to have a minimal negative impact on the roads and skid trails, they could have had more impact on the invasive species issue.

*Id.* Ex. 7, at 4-5. Although Defendants provided Plaintiffs with a defense in the arbitration under a reservation of rights, Defendants refused to indemnify Plaintiffs for the damages awarded, including the attorney fees and costs.

The insurance policies that Plaintiffs obtained provide Defendants "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." VanValkenburg Decl. (#24) Ex. 8, at 6. The policies also state they only apply to bodily injury or property damage that was "caused by an 'occurrence'" during the policy period. *Id.* Ex. 8, at 6. In addition, the policies providing coverage only apply if Plaintiffs (including their agents) did not know prior to the policy period that the bodily injury or property damage had occurred in whole or in part. *Id.* Ex. 8, at 6.

The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Ex. 8, at 20. The policies define "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* Ex. 8, at 21.

The policies also included several exclusions from coverage that Defendants contend are relevant to this case, including exclusions for "expected or intended injury," certain types of damage to property arising out of Plaintiffs' own work and operations, damage to Plaintiffs' "work," and "damage to impaired property or property not physically injured." In addition, the policies require Defendants to pay "[a]ll court costs taxed against the insured in" any lawsuit

5 – OPINION AND ORDER

against Plaintiffs that Defendants defend, but that such "payments do not include attorneys' fees or attorneys' expenses taxed against the insured." *Id.* Ex. 8, at 9.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

As noted, Defendants move for summary judgment on Claim One on the basis that the arbitration award does not fall within the scope of coverage and, even if it did, it would nonetheless fall within one of the coverage exclusions. Plaintiffs, on the other hand, oppose Defendants' Motion and move for summary judgment in their own right on the basis that the arbitration award falls within the scope of coverage and none of the exclusions apply. Because the parties' respective arguments are effectively mirror images of each other, the Court analyzes the parties' Motions together.

The parties agree this case is properly before this Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the Court applies the substantive law of the State of Oregon and federal rules of procedure.[2] *Hyan v. Hummer*, 825 F.3d 1043, 1046 (9th Cir. 2016); s*ee also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

With indemnity claims for the amount of a judgment previously entered, the court "must look to the evidence submitted at trial to determine whether the judgment was based on a claim covered under the insurance policy at issue." *Ohio Cas. Ins. Co. v. Ferrell Devs., LLC*, No. 3:10-cv-00162-AC, 2011 WL 5358620, at *5 (D. Or. Jul. 27, 2011) (citing *Mutual of Enumclaw Ins. Co. v. Gass*, 786 P.2d 749, 751 (Or. Ct. App. 1990)). "What the insured is legally obligated to pay as damages can be determined only by reference to the underlying action, which determined the insured's legal obligation to pay damages." *Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 380 P.3d 916, 925 (Or. 2016). As a result, in the subsequent proceeding to determine whether the insurer bears a duty to indemnify the insured for the judgment in the prior action the parties may not "retry [the] insured's liability[] or alter the nature of the damages awarded" in the prior proceeding. *Id.* "Rather, what the insured had become obligated to pay as damages and whether the insurer ultimately was liable under its policy present[] questions of law for the court to determine by reference to (a) the contract and (b) the judgment and record in the underlying proceeding." *Id.* at 926.

Plaintiffs bear the initial burden of proving coverage under the terms of the policy. *Id*. at 927. If Plaintiffs demonstrate coverage exists under the terms of the policy, the burden shifts to Defendants to prove that an exclusion from coverage applies. *Id.*

---

[2] The parties agree Oregon substantive law applies to this case and do not point to any evidence in the record from which the Court could reach any other conclusion.

Defendants contend Plaintiffs have failed to carry their burden to demonstrate the liability they incurred as a result of the arbitration award is covered under the policy. In particular, Defendants contend the arbitrators awarded damages for breach of contract and, therefore, Plaintiffs did not incur the liability as a result of an "occurrence" within the meaning of the policy. Plaintiffs, on the other hand, contend the arbitration award rests at least in part on a negligence theory and that the liability, therefore, stems from a series of "occurrences."

As noted, the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." VanValkenburg Decl. (#24) Ex. 8, at 20. The policy does not define the word "accident," but Oregon courts have held in this context that "'accident' has a tortious connotation." *Kisle v. St. Paul Fire & Marine Ins. Co.*, 495 P.2d 1198, 1200 (Or. 1972). Accordingly, the Oregon Supreme Court "has indicated that there can be no 'accident,' within the meaning of a commercial liability policy, when the resulting damage is merely a breach of contract." *Oak Crest Const. Co. v. Austin Mut. Ins. Co.*, 998 P.2d 1254, 1257 (Or. 2000). The *Kisle* court, however, observed that a "tort is a breach of a duty created by law and not necessarily by the agreement of the parties," and that, therefore, "[d]amage caused by the negligent performance of a contract can in certain instances be recoverable in tort" when "the parties have entered into a relationship in which the law requires, apart from any obligation assumed by contract, that the obligor act with due care." *Kisle*, 495 P.2d at 1200. *See also Oak Crest Const. Co.*, 998 P.2d. at 1257.

Because the liability stems from the arbitration award, the court begins its analysis and gives the greatest weight to the findings and conclusions in the arbitration award itself. Although the factual record at trial is relevant to the extent that it can shed light on the arbitrators' findings (*see Fountaincourt Homeowners' Ass'n*, 380 P.3d at 926 (noting the court is to look to "the

judgment and record in the underlying proceeding")), the arbitration award is of paramount importance because it is the ultimate source of the liability that may or may not trigger coverage under the policy. To adopt any other approach would run the risk of impermissibly re-litigating or altering the nature of the arbitration award. *See id.* at 925 (prohibiting a subsequent court from retrying the insured's liability or altering the nature of the damages awarded).

Plaintiffs rely on the arbitrators' denial of their Motion for Judgment as a Matter of Law as to the Grays' negligence and breach of contract claims to support their contention that the liability stems at least in part from negligence and, therefore, is covered under the policy. That denial of Plaintiffs' motion for judgment as a matter of law, however, was the only reference to negligence in the arbitration award, and the denial of a motion for judgment as a matter of law is not the equivalent of a finding of liability on a negligence theory.

Each of the arbitrators' findings as to liability speak unambiguously and exclusively in terms of a contract theory. The arbitrators' findings as to liability recited directly the elements of a claim for breach of contract: (1) the existence of a valid contract term ("The Respondents were required to surrender the 'Lands' to the Claimants in 'good condition' as of March 31, 2013"); (2) the breach of that term ("The 'Lands' were not in 'good condition' as of March 31, 2013"); and (3) injury ("The Claimants have suffered damages due to the 'Lands' not being in 'good condition' as of March 31, 2013"). The arbitrators then concluded their legal findings by specifying the damages suffered by the Grays. There is not any indication in those findings that the arbitrators were making findings as to the elements of the Grays' negligence claim and, in particular, there is not any indication that the arbitrators found that Plaintiffs owed and violated any duty imposed by law apart from the lease. *See Kisle*, 495 P.2d at 1200.

Similarly, the only apparent authority that supports the arbitrators' award of attorneys' fees and costs to the Grays is the attorneys' fees and costs provision in the lease itself. *See* Van Valkenburg Decl. (#23) Ex. 2, at 14. The attorneys' fees and costs, therefore, were part of the damages that stemmed from a breach of contract.

The arbitrators' specific findings regarding damages further support the conclusion that the award sounded in contract rather than negligence. Neither the arbitrators nor Plaintiffs identify any duty imposed by law outside the context of the lease that, for example, required Plaintiffs to properly stock stands of trees, control for invasive species, maintain boundary lines, or plant second-generation (not first-generation) seedlings. Accordingly, the Court finds the arbitration award strongly supports Defendants' argument that the liability that Plaintiffs incurred sounded in contract and not in tort.

The record from the arbitration that the parties submitted on summary judgment does not point to a different result. Although there is some evidence from which a finder of fact could conclude Plaintiffs acted negligently in certain respects, there is also substantial evidence that supports the contract theory on which the arbitrators ultimately relied in the award.

On this record, therefore, the Court finds Plaintiffs' liability arising out of the arbitration award is in the nature of a breach of contract, and does not arise from any claim of negligence or any other tort. The Court concludes Plaintiffs' liability does not arise from any "occurrence" within the meaning of the insurance policy and, therefore, Defendants do not have any duty to indemnify Plaintiffs for the damages, attorneys' fees, and costs in the arbitration award. Defendants, therefore, are entitled to summary judgment on Claim One.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion (#22) for Summary Judgment on Count One of Plaintiffs' Complaint and DENIES Plaintiffs' Corrected Motion (#27) for Summary Judgment on Stage One Claims.

IT IS SO ORDERED.

DATED this __30th__ day of August, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge